STATE OF MARYLAND *v.* MARCIANNA WOOTEN

[No. 1080, September Term, 1974.]

*Decided July 3, 1975.*

The cause was argued before ORTH, C. J., and DAVIDSON and LOWE, JJ.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Gary Melick, Assistant Attorney General, William E. Brannan, State's Attorney for Baltimore County,* and *Michael B. Sauer, Assistant State's Attorney for Baltimore County,* on the brief, for appellant.

*Robert N. Dugan,* with whom was *Russell J. White* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

## THE ISSUES

The preliminary issue in this case is whether the appeal by the State from the denial of its motion to correct an allegedly illegal sentence is properly before us. We hold that it is. The primary issue — whether the sentence was illegal — will therefore be determined. In making that determination we must demarcate the punishment a trial judge is authorized to impose on a person convicted of murder in the first degree.

## STATEMENT OF THE CASE

At a bench trial in the Circuit Court for Baltimore County Marcianna Wooten was convicted of the first degree murder of William Eugene Wooten, her husband.[1] She was sentenced to life imprisonment, but the court ordered that not more than eight years be served, the balance of the sentence to be suspended. The State filed a motion claiming that the sentence as imposed was "improper, illegal, and in derogation of Statutory law" because "the only sentence that can be imposed for conviction of murder in the first degree is life imprisonment" and "under Statutory law and the cases construing same, no discretion is lodged in the sentencing Judge to impose any sentence other than life imprisonment for a conviction of murder in the first degree." It prayed that the court correct the illegal sentence and impose a life sentence in accordance with Code, Art. 27, § 413. The motion was denied upon hearing.[2] The State appealed from the denial. Mrs. Wooten included a motion to dismiss the appeal in her brief filed in this Court. Maryland Rule 1036, § d.

---

1. Marcianna Wooten was jointly indicted and jointly tried with Norman Charles Abrams. He was found not guilty.

2. Prior to the motion filed by the State, Mrs. Wooten moved the court below to modify its judgment or to reduce the length of the sentence imposed. The answer filed by the State claimed that the sentence was improper and illegal and suggested a life sentence be imposed with no suspension of any part of the term. No express disposition of this motion is reflected in the record before us.

## THE PROPRIETY OF THE APPEAL

Mrs. Wooten claims that the appeal by the State is not allowed by law. Pointing out that the State entered its motion under Rule 764, § a which provides: "The court may correct an illegal sentence at any time", she urges under the authority of *Harris v. State*, 241 Md. 596, 597-598 and *Dawson v. State*, 17 Md. App. 316, 319-320, that relief under the Rule is "a statutory remedy and, as such, not appealable." Both those cases were decided prior to the decision in *State ex rel. Sonner v. Shearin*, 272 Md. 502, which we think is dispositive of the question of the appeal here. In *Shearin* the Court of Appeals held that the trial judge's refusal to correct an illegal sentence was properly appealed by the State. There, as here, the State appealed to this Court from the trial court's denial of the State's motion to correct a sentence alleged to be illegal. Before we considered the appeal, the Court of Appeals granted the State's petition for a writ of certiorari. The Court of Appeals found, at 526, that the holding in *State v. Fisher*, 204 Md. 307, considered in light of the language used in *Liquor Board v. Handelman*, 212 Md. 152, and the subsequent holding in *State v. Jacob*, 234 Md. 452, "is authority for an appeal from the imposition of an illegal sentence, since the issue of the trial court's jurisdiction is involved in the sense whether it exceeded the powers vested in it by prescribing a penalty contrary to law. A lower court which thus exceeds its powers must be bridled by a court of last resort. Were it otherwise, mandates of the General Assembly could be defied with impunity and the only protection of the public would be the torturous process of judicial removal which would not have the effect of correcting the specific error." Because the appeal was before the Court of Appeals only by way of certiorari to this Court, it necessarily follows that the Court of Appeals found that the appeal, for the reasons it expressed, was properly before the Court of Special Appeals. It is true that the Court of Appeals noted that it was not obliged to interpret Courts Art. §§ 12-301 and 12-302 as those sections might apply to the case before it, 272 Md. at 526, footnote 6. This was so because the law which was in

effect at the time *Jacob* was decided was to all intents and purposes the law in effect at the beginning of the prosecution involved in *Shearin*, which was before the effective date of the revisions codified as Courts Art. §§ 12-301 and 12-302. We believe, however, that the revisions made no change in the law material to the question here. The Revisor's Note to § 12-301 explains that, with one exception not here relevant, no change was intended in the general rules as to appealability. With reference to § 12-302 (c) concerning appeals in criminal cases by the State, the Revisor points out that the subsection is essentially the language of the former Art. 5, § 14. Thus, the enactment of §§ 12-301 and 12-302 did not so change the law under which *Shearin* was decided as to affect the *Shearin* holding. Under that holding the appeal here is properly before us and we so find.[3]

## THE SENTENCE AUTHORIZED UPON CONVICTION OF MURDER IN THE FIRST DEGREE

At common law the penalty for murder was death.[4] F. Wharton, *The Law of Homicide*, § 659 (3rd ed. 1907). In 1809 Maryland for the first time made statutory provisions for

---

**3.** It is indicated that an express declaration that the State had the right to appeal from the imposition of an illegal sentence was considered and rejected with respect to §§ 12-301 and 12-302. We observe that it may well be that such a provision was not included for the same reasons such a provision was not inserted when Art. 5, § 14 was enacted by ch. 399, Acts 1957 — it was simply not required because there the right of such appeal existed in any event. See Shearin at 522-523.

**4.** 4 W. Blackstone, Commentaries, as adapted by R. M. Kerr, Haar Edition, 1962, referring at 224 to 201 of the original Blackstone reads:

> "The punishment of murder, and that of manslaughter, were formerly one and the same; both having the benefit of clergy; so that none but unlearned persons, who least knew the guilt of it, were put to death for this enormous crime. But by several early statutes, the benefit of clergy was early taken away from murderers through malice prepense, their abettors, procurers and counsellors; and the punishment of the principal criminal, or of an accessory *before* the fact, is now, in all cases, death; while accessories *after* the fact are liable to transportation for life, or imprisonment not exceeding two years."

For a discussion of punishments at the common law see Done v. People, 5 Park. Crim. Rep. 364 (N. Y. 1865), noting that the method of execution for murder was by hanging by the neck.

the punishment of unlawful homicide. Acts 1809, ch. 138, § IV (1) prescribed: "Every person convicted of murder of the first degree, his or her aiders, abettors and counsellors, shall suffer death by hanging by the neck." This statutory affirmation as to murder in the first degree of the common law penalty for murder obtained until 1908 when a lesser sentence in the discretion of the trial court was authorized by the General Assembly. It provided in ch. 115, Acts 1908:

"Every person convicted of murder in the first degree, his or her aiders, abettors and counsellors shall suffer death, or undergo a confinement in the penitentiary of the State for the period of their natural life, in the discretion of the court before whom such person may be tried."

Eight years later, ch. 214, Acts 1916, enabled a jury to proscribe the death penalty if it desired:

"Every person convicted of murder in the first degree, his or her aiders, abettors and counsellors, shall suffer death, or undergo a confinement in the penitentiary of the State for the period of their natural life, in the discretion of the Court before whom such person may be tried; provided, however, that the jury in a murder case who render a verdict of murder in the first degree, may add thereto the words 'without capital punishment,' in which case the sentence of the court shall be imprisonment for life, and in no case where a jury shall have rendered a verdict in manner and form as hereinbefore prescribed, 'without capital punishment,' shall the court in imposing the sentence, sentence the convicted party to pay the death penalty." [5]

This statute remained viable until 29 June 1972 when the Supreme Court of the United States decided the consolidated cases of *Furman v. Georgia, Jackson v. Georgia* and *Branch v. Texas, sub nom. Furman v. Georgia,* 408 U. S. 238, *reh.*

---

5. Acts 1922, ch. 465, later revised and now codified as Art. 27, §§ 71-79, dealt with the carrying out of the death penalty. By ch. 625, Acts 1955, hanging was replaced by the administration of a lethal gas.

*den.* 409 U. S. 902. Our Court of Appeals construed *Furman* in *Bartholomey v. State,* 267 Md. 175, 184:

> "We entertain not the slightest doubt that the imposition of the death sentence under any of the presently existing discretionary statutes of Maryland which authorize, but do not require, that penalty is unconstitutional under *Furman* as violative of the Eighth and Fourteenth Amendments to the federal constitution. In other words, we think the net result of the holding in *Furman* is that the death penalty is unconstitutional when its imposition is not mandatory."

Thus, at the present time in Maryland, and until 1 July 1975, the punishment upon conviction of murder in the first degree is life imprisonment, the death penalty having been read out of § 413 by judicial fiat. In 1975 the General Assembly attempted to restore the death penalty within constitutional limitations. Acts 1975, ch. 252, effective 1 July 1975, repealed present § 413, other sections authorizing the death penalty, and related sections, and re-enacted them with amendments. The statutory scheme as to conviction of murder in the first degree or upon conviction of aiding, abetting or counselling the commission of any murder in the first degree was that the punishment be life imprisonment unless otherwise provided, § 413(A) and (C). Subsection (B) spelled out the circumstances under which a person convicted of murder in the first degree "shall be sentenced to death." Subsection (D) assured that the death penalty where provided was mandatory:

> "A death sentence may not be suspended, and no other penalty in lieu of the death penalty may be imposed upon conviction of murder in the first degree specified in subsection (B)."

In *Bartholomey,* at 185, the Court of Appeals said:

> "The only lawful sentence that can be imposed for murder in the first degree under the controlling

statute (§ 413) [as then in effect] is life imprisonment; no discretion is lodged in the sentencing judge and the imposition of any other sentence would plainly be illegal."

The sentencing judge here made plain that he was well aware of this.[6] He also observed that Code, Art. 27, § 643, permitting the imposition of a penalty less than the statutory minimum under certain circumstances had no application to a sentence imposed under § 413.[7] Therefore, he imposed a sentence of life imprisonment, stating that it was as required by the law to which he referred. He then, however, ordered that Mrs. Wooten serve only 8 years, and suspended the balance of the sentence. It is manifest that the practical effect was as if a sentence of 8 years had been imposed flat out. The question is whether the judge could properly do indirectly what he could not do directly.

The judge below found authority for his action in Code, Art. 27, § 641A. As enacted by ch. 480, Acts 1970, effective 1 July 1970, it reads:

"Upon entering a judgment of conviction, the court having jurisdiction, may suspend the imposition or execution of sentence and place the defendant on probation upon such terms and

---

6. The judge below said:

"Article 27, Section 413, provides that every person convicted of murder in the first degree shall undergo a confinement in the penitentiary of the State for the period of their natural life.

It has been ruled that no other sentence is legal and that there is no discretion lodged in the sentencing judge."

7. Art. 27, § 643, enacted by Acts 1906, ch. 536 and amended by Acts 1972, ch. 181, § 28 to include the District Court of Maryland, provides:

"In all cases where the law prescribing a punishment for crime fixes a maximum and a minimum penalty therefor, the judge of the Criminal Court of Baltimore and the serveral judges of the circuit courts of the counties and of the District Court of Maryland may, in lieu of the minimum penalty so prescribed, impose a less penalty of the same character; provided, however, that nothing herein contained shall be construed as affecting any maximum penalty fixed by law, or the punishment for any crime where the law provides one and only one penalty."

Bartholomey v. State, supra, at 185-186, held that in view of Furman v. Georgia, supra, the provisions of § 643 have no application to a sentence imposed under § 413.

conditions as the courts deem proper. The court may impose a sentence for a specified period and provide that a lesser period be served in confinement, suspend the remainder of the sentence and grant probation for a period longer than the sentence but not in excess of five years.

Probation may be granted whether the offense is punishable by fine or imprisonment or both. If the offense is punishable by both fine and imprisonment, the court may impose a fine and place the defendant on probation as to the imprisonment. Probation may be limited to one or more counts or indictments, but, in the absence of express limitation, shall extend to the entire sentence and judgment. The court may revoke or modify any condition of probation or may reduce the period of probation."

We are constrained to agree that § 641A applies to § 413 because we see no indicia of a legislative intent that it should not apply. When the General Assembly said: "The court may impose a sentence for a specified period and provide that a lesser period be served in confinement, [and] suspend the remainder of the sentence . . ." it left nothing to be clarified, nothing to be construed, nothing to be interpreted. We are unable to read into the statutes any intent to except § 413 from the discretion bestowed upon the sentencing judge by § 641A. Our view is buttressed by the care with which the Legislature on two occasions spelled out that no discretion was left to the sentencing judge. As we have indicated, in the re-enactment of § 413 it provided explicitly, "A death sentence may not be suspended, and no other penalty may be imposed upon conviction of a murder in the first degree specified in subsection (B)." We note that, in view of this specific prohibition with regard to the death penalty, the silence of the Legislature in the new Act as to the suspension of a life sentence clearly indicates an intent not to exclude a life sentence from the operation of § 641A. In enacting the law relating to handguns the Legislature made its intent

equally clear. It declared that no court shall enter a judgment for less than the mandatory minimum sentence specified, that no court shall suspend a mandatory minimum sentence, that no court shall grant probation before verdict, and that no court shall grant probation after verdict which would have the effect of reducing the actual period of confinement prescribed as a mandatory minimum sentence. The exceptions to those provisions are expressly set out. Code, Art. 27, § 36B (e).[8]

In sentencing Mrs. Wooten, the court did not place her on probation upon any terms and conditions in suspending a part of the time to be spent in confinement. The State suggests, and argued below, that § 641A requires that a defendant be placed on probation when a sentence is imposed for a specified period but a lesser period to be served in confinement is provided by the court. We cannot construe § 641A that way. The application of all of its provisions is clearly within the discretion of the court; it "may" do the things spelled out. Furthermore, the court "may revoke or modify any condition of probation or may reduce the period of probation." We think that in suspending a part of the sentence imposed, the placing upon probation upon terms and conditions is not mandatory on the court.[9]

The short of it is that in the face of the statutory law, if the General Assembly desires that a life sentence imposed upon conviction of murder in the first degree shall not be

---

8. The Court in Shearin found that those provisions were a valid exercise of the power of the General Assembly. 272 Md. at 519.

9. In so concluding we are aware that as originally drafted, the title of ch. 480, Acts 1970, stated that it was to provide for "alternatives in sentencing whereby a part of the sentence may be served in confinement and the remainder as a period of probation upon terms and conditions as the courts may deem proper." As enacted, this was stricken from the title and the purpose of the Act was said to be "to provide for periods of probation under certain conditions and generally relating to probation."

Of course, we are not concerned in this opinion with the matter of parole. Code, Art. 41, § 122 (b) provides that no person who has been sentenced to life imprisonment shall be eligible for parole consideration until he has served 15 years or its equal considering statutory allowances for diminution of the period of confinement. It further provides that prisoners serving terms of life imprisonment shall only be paroled with approval of the Governor. See Dennis v. Warden, 12 Md. App. 512. We express no opinion as to the applicability of § 122 (b) with respect to the sentence here imposed.

suspended in whole or in part in the discretion of the sentencing judge, it must so declare by the enactment of legislation to that end.

*Judgment affirmed; costs to be paid by Baltimore County.*